IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAROLYN ROBERTSON | § | |
| | § | |
| v. | § | C.A. No. 4:18-cv-2323 |
| | § | |
| ACADEMY LTD D/B/A | § | JURY DEMANDED |
| ACADEMY SPORTS AND OUTDOORS | § | |
| and ACADAMY MANAGING CO., LLC | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

COMES NOW Plaintiff, Carolyn Robertson ("Robertson") files this Original Complaint against Defendant Academy LTD d/b/a Academy Sports and Outdoors and Academy Managing Company, LLC ("Academy"), and shows the Court as follows:

### A. PARTIES AND SERVICE

1. Plaintiff, Carolyn Robertson is an individual who resides 3119 Upland Spring Trace, Katy, Texas 77493.

2. Defendant, Academy LTD d/b/a Academy Sports and Outdoors is a Texas Corporation and may be served by delivering a copy of the summons and complaint to its registered agent Genetha Turner, at 1540 North Mason Road, Katy, Texas 77449.

3. Defendant, Academy Managing Co., LLC is a Texas Corporation and may be served by delivering a copy of the summons and complaint to its registered agent Genetha Turner, at 1540 North Mason Road, Katy, Texas 77449.

### B. JURISDICTION & VENUE

4. The Court has subject matter jurisdiction over this case based on federal

question jurisdiction. There is federal question jurisdiction because Robertson bases claims on federal laws, specifically the FMLA and the ADA.

5. The Court has venue over this matter because a substantial part of the events or omissions giving rise to Robertson's claims occurred in this district, the unlawful employment practices alleged in this case occurred in this district, and there are employment records relevant to Robertson's claims maintained and administered by Academy in this district. 28 U.S.C. § 1391(b); 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(f)(3).

## C. FACTUAL BACKGROUND AND ROBERTSON'S WRONGFUL TERMINATION

6. All of the facts and assertions herein are based on information and belief.

7. Robertson worked for Academy from March 17, 2014 to November 9, 2016.

8. During her employment with Academy, Robertson was never written up or given a written reprimand.

9. When she applied for her job at Academy, she told Academy about her lung disease, lymphangioleiomyomatosis ("LAM").

10. LAM is a rare lung disease in which the muscle cells that line the lungs' airways and blood vessels begin to multiply abnormally. Some of the symptoms include fatigue, cough, hemoptysis, chest pain as well as other symptoms. LAM requires monitoring and treatment, including frequent doctor's visits.

11. Robertson never hid her LAM disease from Academy and she have talked

openly about her treatments of the disease. Academy knew Robertson's LAM required continuing treatment by a health care provider.

12. Despite her disease, she worked hard at Academy.

13. Robertson did not miss much work (only occasional doctors' visits) and never used her disease to make any excuses.

14. On August 26, 2016, a little more than two months before she was fired, Academy gave Robertson two awards, both "For fostering an environment of teamwork and collaboration." One award is the "Rock Solid" award in which Robertson was recognized for being "an amazing manager."

15. On November 1, 2016 Robertson presented Academy with a doctor's note altering her schedule due to her LAM disease.

16. Academy knew that at that time, Robertson's LAM disease was flaring up.

17. Robertson's doctor determined she needed to schedule doctor's visits every couple of days for two months – and possibly longer.

18. These visits would only be a couple of hours and Robertson still planned to come to work every day.

19. Academy's supervisors were not happy that Robertson would have to miss work due to her doctor's appointments.

20. On November 8, 2016, Robertson told Academy that her doctor told her that she needed to avoid dust to prevent more lung problems.

21. At that time, in November of 2016m the Academy office where Robertson worked was under construction and there was a lot of dust.

22. Robertson told Academy that her doctor told her she needed to be in an office with a door that closes to get away from the dust.

23. Robertson told her supervisors on November 8, 2016 that she needed to be moved from her cubicle to an office as her doctor instructed.

24. Robertson did not ask for her own office. She just asked to share an office that several employees already shared and had space for her.

25. The next day, on November 9, 2016, Robertson was fired by Academy.

26. Maria Prince, the VP of Academy told Robertson she was being fired because she said something inappropriate. When Robertson asked what she said that was inappropriate, Prince would not tell her. Maria Prince asked Robertson if she was sorry for what she said and Robertson again asked what had said. Prince then said Robertson was not sorry enough or remorseful for what she had done (even though Prince would not tell Robertson what she had done). Prince then fired Robertson.

## D. TWO FMLA CLAIMS

27. The FMLA was enacted to permit employees to take reasonable leave for medical reasons. 29 U.S.C. § 2601(b)(2). Congress enacted the FMLA in response to concern over "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." *Miller v. AT & T Corp.*, 250 F.3d 820, 833 (4th Cir. 2001) (internal quotations omitted). The FMLA redresses the "serious problems with the discretionary nature of family leave" by guaranteeing leave to qualified employees in certain circumstances. *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721, 732, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003) (internal quotations

omitted).

28. "The FMLA has two distinct sets of provisions, which together seek to meet the needs of families and employees and to accommodate the legitimate interests of employers." *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763 (5th Cir. 2001) (citing Nero v. Indus. Molding Corp., 167 F.3d 921, 927 (5th Cir.1999); *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir.1998)). The provisions in the first set of provisions are prescriptive: they create a series of substantive rights, namely, the right to take up to twelve weeks of unpaid leave under certain circumstances. *Id.* The provisions in the second set are proscriptive: they bar employers from penalizing employees and other individuals for exercising their rights. *Id.*; *see also* 29 U.S.C. § 2615(a)(1)-(2); *Chaffin v. John H. Carter Co.,* 179 F.3d 316, 319 (5th Cir. 1999); Bocalbos, 162 F.3d at 383 ("[T]he Act protects employees from interference with their leave as well as against discrimination or retaliation for exercising their rights.") (citations omitted); *Faris v. Williams WPC-I, Inc.*, 332 F.3d 316, 320-22 (5th Cir. 2003) (holding that there is a distinction between substantive FMLA rights and causes of action for retaliation designed to protect those rights).

29. As set forth below, Robertson asserts violations of both the FMLA's anti-interference and anti-retaliation provisions.

### First FMLA Claim: Robertson's FMLA Interference Claim

30. Regarding the "interference theory" under 29 U.S.C. § 2615(a)(1), an employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" guaranteed by the Act. In establishing an interference claim based on

a failure to grant FMLA leave, "a plaintiff must demonstrate the following: "(1) [he/]she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled." *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)); *Sista v. CDC Ixis N. Am.*, 445 F.3d 161, 167-68 (2d Cir. 2006); *Garraway v. Solomon R. Guggenheim Found.*, 415 F.Supp.2d 377, 382 (S.D.N.Y. 2006); *Morgan v. Neiman Marcus*, No. 3:05-CV0079-G, 2005 WL 3500314, at *4 (N.D. Tex. Dec. 20, 2005). Robertson fulfills all five elements.

31.     First element. An employee is eligible for FMLA leave if she has worked "at least 1,250 hours of service with [her] employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). Robertson satisfies that condition, because she worked more than 1,250 hours between March 17, 2014 to November 9, 2016., and thus she was eligible for FMLA leave in November of 2016.

32.     Second element. To be a "covered employer" under the FMLA, a business must "employ 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(I). Academy clearly meets that test, and is thus a "covered employer" under the FMLA.

33.     Third element. Robertson was entitled to take leave under the FMLA because she had a "serious health condition" as defined by the FMLA. The FMLA allows

eligible employees 12 weeks of unpaid leave each year for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." Id. § 2611(11). FMLA regulations further define a "serious health condition involving continuing treatment by a health care provider" as including:

> (a) Incapacity and treatment. A period of incapacity of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves: (1) Treatment two or more times by a health care provider within 30 days of the first day of incapacity, or (2) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of a health care provider. 29 C.F.R. § 825.115(a)(1) and (2).

34.  "Incapacity" means and includes inability to work or perform other regular daily activities because of the serious health condition and recovery there from. 29 C.F.R. § 825.113(b). "Treatment" means and includes both examinations and evaluations. 29 C.F.R. § 825.113(c). As if to anticipate and describe this very case, the regulations also state that, "[a] regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic)." Id.

35.  Robertson's severe case of LAM was a serious health condition based on

the "incapacity and treatment" definition of "serious health condition," 29 C.F.R. 825.115(a). This is so because the severe case of LAM caused Robertson to: (1) have a "period of incapacity requiring absence from work"; (2) that exceeded three consecutive calendar days; and (3) she received "continuing treatment by... a health care provider" under both 29 C.F.R. § 825.115(a)(1) and (2). *See Rankin v. Seagate Techs., Inc.*, 246 F.3d 1145, 1148 (8th Cir. 2001) (noting these three factors to establish a serious health condition under this definition and reversing a summary judgment that had been granted for the employer because the employee apparently satisfied these factors).

36.     <u>Fourth and fifth elements</u>. The FMLA's notice requirements "are not onerous" and are satisfied when an employee provides her employer with information sufficient to show that she "likely has an FMLA-qualifying condition." *See Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006) (stating that notice is sufficient when employee provides employer with probable basis that FMLA leave applies). Although no categorical rules exist that define adequate notice, the regulations provide that "[a]n employee giving notice of the need for unpaid FMLA leave must explain the reasons for the needed leave so as to allow the employer to determine that the leave qualifies under the Act." *Id.* at 825.301 (b). However, it is not necessary for the employee to "expressly assert rights under the Act or even mention the FMLA" in order to put the employer on notice of her need for leave. *Id.* "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995); *Ladner v. Hancock Medical Center*, 299 Fed. Appx. 380

(5th Cir. Nov 12, 2008) (affirming verdict for plaintiff in FMLA case, rejecting employee's claim that it lacked sufficient notice to trigger FMLA rights, and finding instead that there was sufficient evidence to show that the plaintiff's son was incapacitated due to a serious health condition, and that hospital had notice of the serious health condition).

37. Once an employee puts an employer on notice of a probable basis for FMLA leave, the duty shifts to the employer to request any information necessary to confirm the employee's entitlement to that leave. 29 C.F.R. § 825.301(a). This is so because, as the Fifth Circuit has correctly observed, "the FMLA [is] a statute that requires cooperation from the employer and the employee. After all, the ultimate underlying purpose of the FMLA is to accommodate a particular medical circumstance." *Mauder v. Metropolitan Transit Authority of Harris Cty., Texas*, 446 F.3d 574, 582 (5th Cir. 2006) (italics in original, footnote omitted).

38. Here, Robertson repeatedly gave Academy adequate notice of her need to take time off for a serious health condition. This notice was provided both during and after her days off due to the serious condition. And, it was provided both verbally (both through Robertson's compliance with Academy's normal call-in procedures and otherwise) and in writing including notes from her doctor provided to Academy that are not attached hereto but which are referenced herein.

39. Specifically, November 1, 2016 Robertson presented Academy with a note from her doctor altering her schedule due to her LAM. Academy refused to accept such notice and terminated her due to the notice in violation of the FMLA. *See, e.g., Ladner*,

299 Fed. Appx. at 381 (affirming jury verdict for plaintiff in FMLA interference case); *Manuel,* 66 F.3d at 764; *Saenz v. Harlingen Medical Center, L.P.*, --- F.3d ---, 2010 WL 2992081, at *6 (5th Cir. Aug. 2, 2010).

40. Robertson's doctor's note alone put Academy on clear notice that Robertson's absences were FMLA protected as a serious health condition should have been especially obvious to Academy. That Academy ignored the doctor's letter - and a mountain of other notice - and fired Robertson on November 9, 2016, constitutes a clear violation of the FMLA. *See, e.g., Ladner*, 299 Fed. Appx. at 381 (affirming jury verdict for plaintiff in FMLA interference case); *Manuel*, 66 F.3d at 764 (holding that employee who gave far less notice of the need for unforeseeable FMLA leave than Robertson did gave sufficient notice to create a jury question on whether her notice triggered FMLA protection); *Saenz*,---F.3d at ---, 2010 WL 2992081, at *6 (same).

Second FMLA Claim: Robertson's FMLA Retaliation Claim

41. Section 2615(a)(1) of the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." Section 2615(a)(2) of the FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." In addition, 29 C.F.R. § 825.220(c) prohibits employers from "discriminating against employees or prospective employees who have used FMLA leave."

42. To make out a prima facie case for retaliation under the FMLA, a plaintiff must show that: "(1) she was protected under the FMLA; (2) she suffered an adverse

employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave." *Hunt,* 277 F.3d at 768 (citation omitted). If this initial burden is met, the employer-defendant must then articulate a legitimate reason for the employment action. *Hunt*, 277 F.3d at 768. If that is done, the employee must then show that the articulated reason was actually a pretext for retaliation. *Id*. The plaintiff need not prove that the exercise of FMLA rights was the sole cause of the unfavorable treatment; "[t]he plaintiff is, however, required to show that the protected activity and the adverse employment action are not completely unrelated." *Mauder,* 446 F.3d at 583.

43. Here, Robertson put Academy on notice of her need for FMLA leave and was fired shortly thereafter. Academy's articulated reason for termination is not legitimate because (among other reasons) Academy would not tell Robertson what she did wrong. Academy's reason is a mere pretext to retaliate against Robertson for taking time off because of a serious health condition as is authorized by the FMLA. *See, e.g., Bryant v. Dollar General Corp.*, 538 F.3d 394 (6th Cir. 2008) (affirming jury verdict in FMLA retaliation and holding that the FMLA prohibits employers from retaliating against employees for taking FMLA-covered leave); *Hite v. Vermeer Manufacturing Company*, 446 F.3d 858, 866 (8th Cir. 2006) (same); *Cline v. Wal-Mart Stores, Inc*., 144 F.3d 294 (4th Cir. 1998); *Beekman v. Nestle Purina Petcare Co*., 635 F. Supp. 2d 893, 918 (N.D. Iowa 2009) (denying employer's motion for summary judgment against FMLA retaliation claim in similar factual context).

44. An employer that violates the FMLA may be liable for lost wages and

benefits, liquidated damages, attorney fees, and court costs. 29 U.S.C. § 2617(a). Under the FMLA, an employer may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation (such as back pay and front pay), and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered. See 29 C.F.R. § 825.400(c); *Downey v. Strain*, 510 F.3d 534, 545 (5th Cir. 2007) (awarding two years of front pay to prevailing FMLA plaintiff). Also, an award of liquidated damages (double the back-pay award) is the norm. *See Nero v. Industrial Molding Corp.*, 167 F.3d 921, 929 (5th Cir. 1999) (awarding liquidated damages to prevailing FMLA plaintiff). And, attorneys' fees and costs are awarded to prevailing plaintiffs.

### E. ROBERTSON'S ADA / TEXAS LABOR CODE CLAIMS

45. Academy's termination of Robertson also violated the ADA, as amended January 1, 2009, and the Texas Labor Code, as amended September 1, 2009. *See, e.g., Carmona v. Southwest Airlines Co.*, 604 F.3d 848 (5th Cir. 2010) (affirming a jury verdict against Southwest Airlines in a similar disability discrimination case even under the pre-amendment ADA). As the *Carmona* case sets out, there are three elements of an ADA/Texas Labor Code disability discrimination claim. *Id*. at 854. Specifically, the Plaintiff must have a disability, he or she must be a qualified individual for the position (meaning he or she can perform the position's essential functions with or without reasonable accommodation), and he or she must demonstrate that their disability was a motivating factor in their termination. *Id*. Robertson fulfills all three elements.

46. First, Robertson suffers from a known disability - LAM. Under 42 U.S.C. §12102 (1) a disability is a "physical or mental impairment that substantially limits one or more major life activities of [an] individual." Under 42 U.S.C. §12102 (2) (B), major life activities include the operation of a major bodily function, including but not limited to fatigue, coughing, hemoptysis, chest pain as well as other symptoms. LAM requires monitoring and treatment, including frequent doctor's visits. LAM substantially limits the operation of Robertson's breathing and stamina. Irritable bowel syndrome, in its unmitigated state (which is the state the amended ADA considers it in deciding whether a disability exists) also can substantially limit major life activities that include caring for oneself, performing manual tasks, eating, sleeping, walking, standing, lifting, bending, reading, concentrating, thinking, communicating, and working.

47. Second, Robertson was qualified for her job. Academy acknowledged this by allowing her to work for almost three years.

48. Third, her disability was a motivating reason for her termination. *See Carmona*, 604 F.3d at 855-63 (concluding plaintiff satisfied all three elements of an ADA claim). Academy did not like the fact that Robertson had work related limitations related to her LAM, and Academy was looking for a reason to fire her. Academy did not let the FMLA stand in their way.

49. Under the ADA/Texas Labor Code, a plaintiff may recover compensatory and punitive damages of up to $300,000.00. *See, e.g., Giles v. General Electric Co.*, 245 F.3d 474, 489 (5th Cir. 2001) (awarding $150,000.00 compensatory damages award in ADA case); *E.E.O.C v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 733-34 (5th Cir.

2007) (upholding $300,000.00 punitive damages award in an ADA case). Back and front pay awards can also be significant. *See Giles*, 245 F.3d at 490 (upholding front-pay award of $141,110.00). Attorneys' fees are also recoverable. *Id.* at 490-91 (upholding fee award of $150,837.00 even where the plaintiff's lawyers took no depositions and made no court appearances prior to trial).

50. Robertson is entitled to recover compensatory damages because she suffered emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life as a result of Academy's violation of the ADA and Texas Labor Code.

51. Academy's right to recovery of liquidated damages as provided for under the FMLA does not prevent her from recovering punitive damages under the ADA/Texas Labor Code. *See Smith v. Diffee Ford-Lincoln-Mercury, Inc.,* 298 F.3d 955, 960 (10th Cir. 2002) (employee's recovery of liquidated damages as provided for under FMLA did not prevent her from recovering punitive damages under ADA); *Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1152 (10th Cir.1999) (awarding liquidated damages under the FMLA and punitive damages under Title VII, and expressly rejecting the argument that they represent a double recovery).

52. Robertson is entitled to recover punitive damages because Academy acted with malice or with reckless indifference to the federally protected rights of Robertson.

54. Robertson fulfilled all necessary conditions to suit and received a right to sue letter from the EEOC.

### F.    JURY DEMAND

55. Robertson demands a jury trial.

## G. PRAYER

56. Robertson asks that the Court issue citation for Defendants to appear and answer, and that Robertson be awarded a judgment against Defendants for the following:

    a. Actual damages including by not limited to pecuniary losses, non-pecuniary losses, back-pay, front-pay (or reinstatement), and compensatory damages (the latter under the ADA / Texas Labor Code);

    b. Liquidated damages under the FMLA.

    c. Punitive damages under the ADA / Texas Labor Code.

    d. Prejudgment and postjudgment interest;

    e. Court costs;

    f. Attorneys' fees; and

    g. All other relief to which Plaintiff is entitled.

Respectfully Submitted,

BY:    */s/ Daniel R. Dutko*
    _____
    Daniel R. Dutko
    SBN: 24054206
    Fed ID: 753525
HANSZEN LAPORTE, LLP
14201 Memorial Dr.
Houston, TX 77079
Telephone: 713/522-9444
Telefax: 713/524-2580
E-Mail: ddutko@hanszenlaporte.com
**Attorney for Plaintiff**