UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAROLYN ROBERTSON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-2323 |
| | § | |
| ACADEMY LTD. | § | |
| d/b/a ACADEMY SPORTS AND OUTDOORS, | § | |
| ACADEMY MANAGING CO., L.L.C. | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendants Academy Ltd. d/b/a Academy Sports and Outdoors and Academy Managing Co., LLC's (collectively, "Academy")[1] motion for summary judgment. Dkt. 17. Plaintiff Carolyn Robertson ("Robertson") responded (Dkt. 18), and Academy replied (Dkt. 20). Having considered the motion, response, reply, and applicable law, the court is of the opinion that Academy's motion should GRANTED.

**I. BACKGROUND**

This case is an employment discrimination dispute between Robertson and her former employer, Academy. Robertson alleges Academy violated the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and the Texas Commission on Human Rights Act ("TCHRA") when it terminated her in November 2016. Dkt. 1. Robertson suffers from lymphangioleiomyomatosis ("LAM"), a rare lung disease that required Robertson to occasionally

---

[1] In its brief, Academy explains that the proper legal name for the operating entity that employed plaintiff is Academy, Ltd. d/b/a Academy Sports + Outdoors. The court takes notice of this fact and intends for every reference to Academy to include the legal entity Academy, Ltd. d/b/a Academy Sports + Outdoors as well the named defendants.

miss work for medical appointments. Dkt. 17 at 9. Robertson disclosed her LAM diagnosis when she applied to work at Academy in March 2014, and Academy hired her with full knowledge of her condition. *Id.* Until her termination, Robertson worked as a Technical Design Manager for Academy. *Id.* Robertson reported directly to Janine Burrows ("Burrows"), Senior Manager Technical Design, and Maria Prince ("Prince"), Vice President Private Brand, managed the department. *Id.*

Robertson missed work for medical appointments throughout her time at Academy without issue, yet received positive performance evaluations, raises, and bonuses during the two full years of her employment. *Id.* On one occasion, Robertson took extended FMLA leave to recover from emergency surgery when she suffered a partial lung collapse. *Id.* at 10. During June and July 2016, Robertson took twelve days of full FMLA leave and ten days of intermittent leave during which she worked half days. *Id.* Robertson returned to work without restriction on July 5, 2016. *Id.* During that time, Academy approved all of Robertson's requests for leave. *Id.*; Dkt. 17-1 at 41-42.

On October 24, 2016, Ashana Byndum ("Byndum") complained to Prince of numerous incidents involving Robertson and Burrows that Byndum viewed as inappropriate for the workplace. Dkt. 17 at 10. The next day, Academy initiated an investigation into Byndum's complaints led by Maritza Rivera ("Rivera"). *Id.* at 11; Dkt. 17-3 at 3, 8. Rivera's investigation included a meeting with Robertson during which Robertson admitted to the alleged comments but denied her actions were derogatory or offensive. Dkt. 17 at 11. At the conclusion of Rivera's investigation, Academy concluded that Robertson's actions violated its Ethics and Code of Conduct, and decided to issue a final warning to Robertson. Dkt. 17 at 11. Rivera circulated a draft final warning to Prince and JaNess Strickland, Senior HR Manager, on November 7, 2016. Dkt. 17-3 at 38. Academy also counseled Burrows that inappropriate comments or behavior would not be tolerated and advised that

additional disciplinary action, including termination, would occur if Burrows engaged in such behavior in the future. Dkt. 17-3 at 15; Dkt. 20 at 2.

On November 8, 2016, Robertson informed Burrows that she would need to miss work for thirteen physical therapy appointments between November 7, 2016, and December 13, 2016. Dkt. 18-7. Additionally, Robertson requested to be moved from her cubicle into an enclosed office space during upcoming office renovations on account of her LAM and at the request of her doctor. Dkt. 18 at 5.

The next day, November 9, 2016, Prince and Strickland met with Robertson to review the final warning. Dkt. 17 at 12. The warning advised Robertson that she had engaged in "a pattern of unprofessional, demeaning, disrespectful behavior," and stated that she was "expected to assume total responsibility for the outcome of [her] behavior and interaction with others." Dkt. 17-3 at 39. However, Robertson again denied her conduct was inappropriate and declined to apologize or accept responsibility for any of Byndum's complaints. Dkt. 17 at 12. Prince and Strickland determined that Robertson's insubordination and continued unprofessional conduct warranted her immediate termination. *Id.* Robertson was terminated later that same day. *Id.*

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 436 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2540 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine

issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

### III. ANALYSIS

A.      **Discrimination Claim[2]**

Robertson claims Academy violated the ADA and TCHRA because her LAM diagnosis "was a motivating reason for her termination." Dkt. 1 at 13. To state a discrimination claim under the ADA, a plaintiff must allege facts showing "(1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)). To prevail, Robertson must "either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a Title VII case." *Id.* at 694.

The *McDonnell Douglas* analysis first requires Robertson to establish a prima facie case of discrimination. *See E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009). If Robertson is successful, then Academy must articulate a legitimate, nondiscriminatory reason for terminating Robertson. *See id.* Finally, the burden shifts back to Robertson to show that Academy's proffered reason is pretextual. *See id.* The court will assume without deciding that Robertson established a prima facie case, because Academy has offered its nondiscriminatory rationale for

---

[2] Robertson brings discrimination claims under the ADA as well as the TCHRA. Dkt. 1 at 12-14. Texas courts apply ADA law when evaluating TCHRA discrimination claims, therefore the following ADA analysis applies equally to Robertson's TCHRA claims. *Clark v. Champion Nat'l Sec., Inc.*, 947 F.3d 275, 282 n.16 (5th Cir. 2020).

terminating Robertson to rebut the presumption of discrimination that arises when a plaintiff establishes her prima facie case. *See Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253-54; 101 S. Ct. 1089 (1981).

To meet its intermediary burden, Academy need only "set forth, through admissible evidence, the reasons for its decision." *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 900 (5th Cir. 2012). Academy states that Robertson was fired for violating its Ethics and Code of Conduct Policy. Specifically, Robertson's "defensive, unprofessional, and insubordinate" behavior during her final warning meeting prompted Academy to terminate her. Dkt. 17 at 12. Through its Ethics and Code of Conduct Policy, Academy encourages associates to put three ethical principles into practice: honesty, fairness, and respect. *See* Dkt. 17-3 at 23. It also warns associates that "[a]ny associate violating this Policy may receive disciplinary action up to and including termination." *Id.* at 25. Academy has met its burden of production to show a legitimate, nondiscriminatory reason for Robertson's termination.

Robertson challenges Academy's justification as pretext on two grounds: (1) the investigation of Robertson's conduct was contrived; and (2) Robertson was treated less fairly than Burrows, a similarly situated employee who did not have a disability. Dkt. 18. "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017).

Robertson's first argument is wholly without merit. She asserts that Academy's entire investigation was a sham because the investigation report bears a creation date of November 16, 2016, a full seven days after Robertson's termination. *Id.* at 14. However, Robertson testified at her deposition that she met with Rivera in late October 2016 prior to her termination.

5

Dkt. 18-4 at 35. In addition to its evidence demonstrating the investigation commenced shortly after receiving Byndum's complaints, Academy explained that the creation date marks the day on which Rivera moved her notes into an internal database, not the inception of the investigation. Dkt. 20 at 4; *see also* Dkt. 17-3 at 3 (email from Strickland to Rivera forwarding Byndum' complaints); Dkt. 17-3 at 8 (Rivera Decl.) (noting the investigation of Byndum's complaints took place in October/November 2016); *id.* at 18 (Strickland Decl.) (same); *id.* at 38 (email from Rivera to Prince and Strickland attaching draft final warning); Dkt. 20-2 at 17 (Rivera Decl.) (noting the investigation commenced on October 26, 2016). No reasonable jury could find that Academy's investigation was a sham started after Robertson's termination, therefore Robertson has not met her burden to produce evidence of a genuine issue of material fact as to the legitimacy of Academy's investigation.

Robertson also claims Academy's disparate treatment of herself and Burrows is evidence of pretext. It is true that Byndum implicated Burrows and Robertson in her complaints of inappropriate workplace conduct. It is also true that Robertson received a final, written warning as a result of the investigation, whereas Burrows was verbally counseled that inappropriate behavior would not be tolerated. As a result of the investigation, both parties were issued warnings, but crucially, neither suffered an adverse employment action as a result of the investigation of Byndum's complaints.

Robertson instead was terminated as a result of her insubordinate and unprofessional behavior during the final warning meeting, not for inappropriate actions toward Byndum. "If the difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (emphasis in original). Therefore, Burrows is not similarly situated, and Robertson fails to provide a comparator to show Academy's disparate treatment of her.

Because Robertson has not carried her burden to show a genuine issue of material fact regarding the pretextual nature of Academy's justification, summary judgment in favor of Academy is appropriate. Academy's motion as to Robertson's ADA and TCHRA claims is GRANTED.

**B.     FMLA Claims**

Robertson also alleges Academy violated the FMLA when it terminated her. She premises these claims on a time off request for LAM therapy presented to Burrows the day before Academy terminated Robertson. Dkt. 18 at 16-17. The FMLA requires covered employers to grant covered employees up to twelve weeks of unpaid leave for certain qualifying reasons, such as the birth of a child or the occurrence of a serious health condition. *See* 29 U.S.C. § 2612(a). To ensure employer compliance, the FMLA mandates that employees who take FMLA leave shall be entitled to restoration to their old positions. *Id.* § 2614(a). Additionally, the FMLA makes it unlawful for any employer to "interfere with, restrain, or deny" the exercise of any right provided under the FMLA. *Id.* § 2615(a)(1). Further, the FMLA's "prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c).

1. *FMLA Retaliation*

"To prove FMLA retaliation, the employee must demonstrate: 1) he was protected under the FMLA; 2) he suffered an adverse employment action; and 3) he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017). "The third element requires the employee to show 'there is a causal link' between the FMLA-protected activity and the adverse action." *Id.* (citing *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005)). Establishing a causal connection in the employment

7

context "requires some showing that the decisionmaker—the individual who actually made the decision or caused the decision to be made—was aware of the activity." *E.E.O.C. v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017).

Robertson's retaliation claim fails because she cannot show a causal link between her alleged request for FMLA leave and her termination. She presents no evidence that either Prince or Strickland were aware that Robertson had requested time off to attend doctor's appointments. Conversely, Academy offers competent evidence showing that neither Prince nor Strickland was aware of Robertson's request, thereby quashing any causal link between her request and subsequent termination. Dkt. 17-3 at 19; 17-4 at 8. Therefore, summary judgment for Academy as to Robertson's FMLA retaliation claim must be GRANTED.

2. *FMLA Interference*

Lastly, Robertson alleges Academy interfered with her ability to take FMLA in November and December 2016 when it terminated her. "To make a prima facie case of interference, a plaintiff must demonstrate that (1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Tatum v. S. Co. Servs., Inc.*, 930 F.3d 709, 713 (5th Cir. 2019). However, Robertson has not shown that she gave proper notice of her intention to take FMLA leave.

"The regulation implementing FMLA 'explicitly permits employers to condition FMLA-protected leave upon an employee's compliance with the employer's usual notice and procedural requirements.'" *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018) (quoting *Acker*, 853 F.3d at 789). In her deposition, Robertson admits that based on her experience from June and July 2016, she "would have to ask HR" for FMLA leave and accommodation. Dkt. 18-4 at 53.

But Robertson merely handed a list of scheduled appointments to her supervisor, Burrows, and said she would make up any missed time. *Id.* This testimony alone shows that Robertson was aware of Academy's usual notice and procedural requirements for requesting FMLA leave, but failed to follow them. Because Robertson did not give proper notice of her intention to take FMLA leave, summary judgment for Academy as to Robertson's FMLA interference claim must be GRANTED.

## IV. CONCLUSION

For the foregoing reasons, Academy's motion for summary judgment (Dkt. 18) is GRANTED.

Signed at Houston, Texas on February 21, 2020.

_____
Gray H. Miller
Senior United States District Judge